IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:07-CR-14-SRW |
| | ) | |
| MARIA HINTON | ) | |

**DEFENDANT'S RESPONSE IN SUPPORT OF MOTION TO DISMISS &
REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS**

**NOW COMES** the Defendant, Maria Conchi Hinton ("Mrs. Hinton"), by and through undersigned counsel, and states the following in response to "Government Response to Motion to Dismiss," filed on June 25, 2007. (Doc. 27).

In Defendant's Renewed Motion to Dismiss ("Motion to Dismiss"), filed on June 7, 2007, the Defendant argued that she has been prejudiced by the government's improper failure to preserve evidence in this case because she has been denied her due process right to prepare a defense by being denied her right to inspect evidence. (Doc. #21). Mrs. Hinton asserted, among other things, that "[a]s the items to be inspected have been restocked for resale, and thus permanently unavailable, there are no means to cure this prejudice." (Doc. #21, p. 8-9).[1]

In "Government Response to Motion to Dismiss" ("Response"), the Government admitted that pursuant to a Maxwell Base Exchange Policy, the evidence in this case is "no longer in the government's possession and they are no longer available." (Doc. #27, p.1-2).

---

[1] The Defendant also renewed her objection to the Government's continued failure to make full disclosure regarding the alleged false statement made by the Defendant. Although the Government has asserted that the statement "is not relevant to the pending charges," this alleged false statement as been used by the Special Assistant to the United States, Captain Reese Hays ("Mr. Hays") as justification for denial of the pretrial diversion request submitted to the Government on Mrs. Hinton's behalf on April 17, 2007. At this time, undersigned counsel has not received any information that would lead counsel to believe Mr. Hays' position has changed.

>The Government asserts in its Response,
>
>>The unavailability of these physical items does not deprive the defendant of her right to due process because the defense is able to view the photograph or watch the surveillance video and conduct an examination. Furthermore, the defense can review the affidavit submitted by the store detective. The defense can also interview the store detective who witnessed the items being taken from the store, observed the retrieval of the items from the accused, and observed the AAFES price tags for both items.

(Doc. 27, p. 2). Defense counsel has viewed the original Polaroid photograph of the lost evidence, and arguably, the jeans in the photograph do not resemble the jeans Mrs. Hinton places in her cart on the surveillance video. In addition, the clarity of the photograph is such that no determination can be made whether the perfume in the photograph is the same perfume Mrs. Hinton is charged with taking as the box shown is plain and nondescript.

The Government states in its Response that "because of the distinctive nature of the Issey Miyake perfume bottle, a demonstrative exhibit could be obtained by the defense." (Doc. #27, p. 2). However, neither the surveillance video nor the Polaroid photograph clearly shows the "distinctive" Issey Miyake perfume bottle. As a result, defense counsel can not obtain a demonstrative exhibit with any certainty that the exhibit chosen is in fact an exact replica of the item Mrs. Hinton is charged with unlawfully taking. Furthermore a preliminary search for Issey Miyake men's perfume on the Amazon.com website revealed approximately nine (9) pages of Issey Miyake perfume for men, of which eight (8) were in different and distinctive clear, frosted, blue, white, and orange bottles. Of the perfumes pictures with its associated packaging, the boxes were either blue, white, silver, or a combination of all three colors.

The surveillance video in this case shows Mrs. Hinton kneeling down next to a large neon green and black CK One perfume display. She appears to pick up a white bottle of perfume from the bottom of this display and spray it. The surveillance video immediately moves away from Mrs. Hinton, and shows other shoppers in other parts of the store. When the video returns to Mrs. Hinton, she can be seen standing near the CK One display, and placing a nondescript box in her cart. It is indeterminable what kind of perfume is inside the box, and the video footage does not show from where Mrs. Hinton took the box. Thus, the Government is incorrect in its assertion that "[t]he unavailability of these physical items does not deprive the defendant of her right to due process because the defense is able to view the photograph or watch the surveillance video and conduct an examination." (Doc. #27, p. 2). Therefore, attempts by defense counsel to obtain demonstrative exhibits of the evidence lost by the Government would be imprudent.

The Government argues that the defense can review the affidavit submitted by the Maxwell Air Force Base store detective or interview the detective to obtain a description of the evidence that has been improperly disposed of. However, the affidavit submitted by the store detective, Robert G. Smith ("Mr. Smith"), is useless in providing Mrs. Hinton with an avenue to her due process right to *inspect* the lost physical evidence. In this case, review of Mr. Smith's affidavit shows that it does not provide a detailed description of the items alleged to have been taken by Mrs. Hinton. The affidavit merely states that Mr. Smith allegedly observed Mrs. Hinton "putting a package of perfume" in her cart, picking "a few clothes," and that a subsequent search of Mrs. Hinton's purse revealed "a pair of children's jeans" and "a bottle of Issey Miyake men's perfume." Additionally, Mr. Smith's affidavit was signed on January 18, 2007. Thus, Mr. Smith attempted to memorialize events that he allegedly observed on November 9, 2006 over two months after the events would have

3

occurred. Therefore, the information in Mr. Smith's affidavit is stale and unreliable.

An interview of Mr. Smith would be equally useless in providing Mrs. Hinton with an avenue to her due process right to *inspect* the lost physical evidence in this case. In addition, it has been over eight (8) months since the events leading up to the current pending charges occurred. It has been over five (5) months since Mr. Smith signed his affidavit. As a store security guard, it is likely that Mr. Smith has been involved in numerous situations in which he has had to view allegedly stolen merchandise. The passage of time has more than likely decreased both the details and the accuracy with which he remembers the details of the events involved in this particular case. Therefore, an interview of him regarding specific, detailed descriptions of a pair of jeans and a bottle of perfume that he allegedly saw Mrs. Hinton take over eight months ago would be futile.

The Government argues that it has met its duty to preserve and locate evidence in good faith pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E) by "keeping the original photograph of the items stolen and making the surveillance video available to defense." (Doc. #27, p. 2). However, this argument presupposes that Fed. R. Crim. P. 16 allows the Government to intentionally dispose of evidence if they take a picture of it first. Such an interpretation neither reflects the literal meaning of Rule 16, nor captures the spirit of Rule 16. The Government has not cited to any case law to support such an interpretation of Rule 16.

"As a matter of fundamental fairness which [the Fifth Amendment] guarantees [a defendant], [Mrs. Hinton] is entitled to access to relevant and material evidence which is necessary for [her] to prepare [her] defense." *United States v. Herndon*, 536 F.2d 1027, 1029 (5th Cir. 1976). The Government argues that "[s]ince there was no failure to preserve evidence known to be exonerating and since the government did not act in bad faith, the defendant was not denied due process of law."

4

(Doc. #27, p.4). However, "[w]hether a defendant has been deprived of [her] right of due process will depend upon the materiality of the evidence, the likelihood of mistaken interpretation of it by government witnesses or the jury, and the reasons for its unavailability to the defense." *Id*. See also *United States v. Nabors*, 707 F.2d 1294 (11th Cir. 1983).

In this case, there is no dispute that the lost evidence in dispute is material. Inspection of the evidence is important to Mrs. Hinton's adequate preparation for trial. The Government's photographing of the items before improperly disposing of it demonstrates that the Government also recognized the materiality of the evidence. The only witness in this case that could possibly testify to a description of the evidence is Mr. Smith, the store detective. Mr. Smith would most likely be a Government witness. Since he has not seen this evidence in over eight (8) months, there is a strong likelihood of a mistaken and inaccurate description of the disputed evidence.

The unavailability of the evidence in this case is due to Government action "in accordance with normal AAFES practice . . . returning the items to be restocked which is customary practice for stolen items under $100." (Doc. 27, p. 3- 4). However, this type of intentional, systemic non-preservation of evidence should not be permitted by this Court. The Government routinely prosecutes individuals for misdemeanor theft offenses originating from the Maxwell Air Force Base for merchandise valued at less than $100. Therefore, the Government is already on notice that the shoplifted merchandise is material evidence that should be retained pursuant to its obligations under Fed. R. Crim. P. 16. The Government should not be allowed to get around its discovery obligation simply by taking a picture of the evidence.

There are several case opinions in which federal courts have held that the unintentional or negligent destruction of evidence by police did not result in a violation of a defendant's due process

where the defendant could not show bad faith. *See California v. Trombetta*, 467 U.S. 479 (1984)(destruction of breath samples due to police negligence and prosecutorial oversight); *Arizona v. Youngblood*, 488 U.S. 51 (1988)(police negligently failed to preserve evidence by appropriate refrigeration of evidence samples); *United States v. Nabors*, 707 F.2d 1294 (11th Cir. 1983)(mistaken destruction of drug evidence); *United States v. Brown*, 9 F.3d 907 (11th Cir. 1993)( negligent loss of firearm by police due to firearm not being appropriately labeled); and *United States v. Roberson*, 195 Fed. Appx. 902 (11th Cir. 2006)( crack cocaine evidence destroyed via evaporation as a result of the manner in which the substances were stored according to Drug Enforcement Administration storage regulations).

There are cases in which federal courts have held that destruction of evidence after the passage of an extended period of storage time did not result in a violation of a defendant's due process where the defendant could not show bad faith. *See United States v. Herndon*, 536 F.2d 1027 (11th Cir. 1976)( destruction of lab sample evidence as a result of a routine procedure in which all lab samples are destroyed after being stored in the lab for six months); *Illinois v. Fisher*, 540 U.S. 554 (2004)( destruction of drug evidence by police due to normal practices where the evidence had been stored for ten years). However, defense counsel could not find any case opinions from the Eleventh Judicial Circuit that addressed the legality of intentional, systematic non-preservation of evidence. However, this issue has been addressed by the Second Judicial Circuit.

In *United States v. Henriquez*, 731 F.2d 131 (2nd Cir. 1984), the appellants, all foreign nationals, were arrested by U.S. Coast Guard officers while aboard a boat containing multiple bails of marijuana. The appellants subsequently pled guilty to possession of marijuana with intent to distribute. On appeal, the appellants argued that their due process rights had been violated where

defense counsel had requested production of the video tape containing footage of the Coast Guard vessel used during the appellants' arrest, and the tape had been erased pursuant to a routine policy that tapes be reused after thirty days. Because of the lower court's finding that there had been no governmental intent to destroy evidence, no prejudice to the appellants, and no question that the marijuana was found aboard the appellants' vessel, the Second Circuit held in favor of the government. However, the Second Circuit stated,

> So that we will not again be in the position in which the Coast Guard has cast us in this case, in the exercise of our supervisory powers, we direct the United States Attorney to advise the United States Coast Guard and each and every agency referred to at page 11 of the Government's brief that in the future deliberate, negligent or other destruction of tapes, whether for budgetary reasons or otherwise, will not be tolerated by this court. We direct further that the United States Attorney report back to this court within 90 days advising us of the warnings given and the replies received.

*United States v. Henriquez*, 731 F.2d at 138.

> The Second Circuit explained that its prior precedent had firmly established that,
>
> [because] the government has long been on notice of its duty to preserve discoverable evidence and has been repeatedly warned of the jeopardy in which it places its prosecutions when it disregards this obligation. . . [the court would] look with an exceedingly jaundiced eye upon future efforts to justify non-production of a Rule 16 or Jencks Act "statement" by reference to "department policy" or "established practice" or anything of the like.... **Where, as here, destruction is deliberate, sanctions will normally follow, irrespective of the perpetrator's motivation**, unless the Government can bear the heavy burden of demonstrating that no prejudice resulted to the defendant.

*Id*., at 137-138. (emphasis added).

In this case, the Government has not demonstrated that Mrs. Hinton has not been prejudiced by its improper disposal of material evidence in this case. The simple fact is that Mrs. Hinton has been prejudiced by the government's discovery violation because she has been denied her due

process right to prepare a defense.  As discussed, *supra*, it would be impractical, and imprudent for defense counsel to try to obtain a "demonstrative exhibit" of the lost evidence  as suggested by the Government in this case. As the evidence in dispute is permanently unavailable, there are no means to cure the prejudice. That has been caused Mrs. Hinton. If this case continues in the absence of this evidence, it will result in the denial of Mrs. Hinton's right to a fair trial.

Just like the United States Attorneys' office in *United States v. Henriquez*, the Government in this case has long been on notice of its duty to preserve discoverable evidence under Fed. R. Crim. P. 16 in the misdemeanor theft offenses it routinely prosecutes. As a result, this Court should disapprove of the Government's current efforts to justify its non-production of  Rule 16 discovery by reference to "normal AAFES practice." (Doc. 27, p. 4).  The Government should not be allowed to shirk its duty under Rule 16 merely because it took a singular Polaroid picture of evidence it knew would be material in this case. Where, as here, the disposal of the evidence was deliberate, the sanction of dismissal of the information in this case should follow irrespective of the Government's motivation for disposal of the evidence.

**WHEREFORE**, the Defendant respectfully prays that this Motion be granted.

Respectfully submitted,

<u>s/Patricia Kemp</u>
**PATRICIA KEMP**
ASB-4592-R80K
Attorney for Maria Conchi Hinton
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: patricia_kemp@fd.org

8

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Kent Brunson, Esquire, Assistant United States Attorney, One Court Square, Suite 201, Montgomery, Alabama 36104 and Reese Hays, III, Special Assistant United States Attorney, 50 LeMay Plaza South, Maxwell AFB, AL 36112.

**s/Patricia Kemp**
**PATRICIA KEMP**
ASB-4592-R80K
Attorney for Maria Conchi Hinton
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: patricia_kemp@fd.org