IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR NO. 2:07cr14-SRW |
| | ) | |
| MARIA HINTON | ) | |

## ORDER

This case is before the court on defendant's renewed motion to dismiss (Doc. # 21),

filed June 7, 2007, and the government's response (Doc. # 27), filed June 26, 2007.  The

court held a hearing on the motion on July 27, 2007.

The information in this misdemeanor case charges that on or about November 9, 2006,

defendant Hinton stole merchandise with a value of less than $1,000 from the Army Air

Force Exchange Service (AAFES) at Maxwell Air Force Base.  Specifically, the government

alleges that a store detective observed defendant putting a package of perfume in her

shopping cart, and covering it with several sales flyers.  After she entered and exited the

dressing room, the detective searched the area and found a cellophane wrapper with the

electronic alarm sensor hidden in a sales flyer on the floor, and officers located the perfume

in defendant's possession, along with a pair of children's jeans (both of which she did not pay

for), after she was apprehended.  See Smith Affidavit (attached to information). Defendant's

renewed motion (Doc. # 21) and response and reply (Doc. # 31) appear to ask the court to

dismiss the information as a sanction for the government's failure to preserve the perfume

and the jeans pursuant to Fed.R.Crim.P. 16 and/or as a remedy for a Due Process violation.[1]

In the instant case, according to the government, security forces returned the perfume bottle and jeans to AAFES after photographing them, and they are no longer in the government's possession.  The United States made the original photograph available for defendant to view, and also transmitted a copy of the photograph. Because the government chose not to retain the allegedly stolen articles themselves, this case is controlled by a line of Supreme Court cases addressing claims concerning the government's failure to preserve evidence, including California v. Trombetta, 467 U.S. 479, 485 (1984); Arizona v. Youngblood, 488 U.S. 51, 55 (1988); and, most recently, Illinois v. Fisher, 540 U.S. 544, 549 (2004).  See U.S. v. Dumas, 207 F.3d 11, 15 (1st Cir. 2000) ("[T]he Supreme Court's jurisprudence divides cases involving nondisclosure of evidence into two distinct universes. Brady and its progeny address exculpatory evidence that is still in the government's possession. Youngblood and Trombetta govern cases in which the government no longer possesses the disputed evidence." United States v. Femia, 9 F.3d 990, 993 (1st Cir.1993)).

In Olszewski v. Spencer, 466 F.3d 47 (1st Cir. 2006), the First Circuit helpfully summarized the Trombetta-Youngblood-Fisher line of cases:

---

[1]  Defendant has also raised objections concerning the government's non-disclosure of an alleged false statement made by defendant, and a portion of a recording not provided to defendant. The court is satisfied that the government does not intend to use the statement at trial, and that it has turned over a complete copy of the only videotape recording of the incident that it has in its possession to the defendant.

To address the problem of the loss or destruction of evidence by the prosecution, "the Supreme Court has developed a framework to analyze 'what might loosely be called the area of constitutionally guaranteed access to evidence.' "[*United States v. Femia,* 9 F.3d 990, 993 (1st Cir.1993)] (quoting *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) and *Arizona v. Youngblood,* 488 U.S. 51, 55, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)). The Supreme Court's decisions in *Trombetta* and *Youngblood* govern the constitutionality of the nondisclosure of evidence in "cases in which the government no longer possesses the disputed evidence." *Id.*

In *Trombetta,* defendants were charged with drunk driving and objected to the state's admission of breath-analysis tests. 467 U.S. at 483, 104 S.Ct. 2528. They complained that the police had destroyed the original breath samples and that as a consequence they could not conduct their own tests. *Id.* The Supreme Court rejected the defendants' due process claim. *Id.* at 489, 104 S.Ct. 2528. As a threshold matter, the Court noted that the police "were acting 'in good faith and in accord with their normal practice' " when they disposed of the breath samples. *Id.* at 488, 104 S.Ct. 2528 (citing *Killian v. United States,* 368 U.S. 231, 242, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961)). The Court then held that "more importantly," the missing evidence did not "meet [the] standard of constitutional materiality." *Id.* at 488-89, 104 S.Ct. 2528. To satisfy this standard, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* The Court held that neither condition was met. *Id.* First, the samples were not apparently exculpatory because "the chances [were] extremely low that preserved samples would have been exculpatory." *Id.* The second condition was not met because the defendants had "alternative means of demonstrating their innocence," *e.g.* inspecting the calibration of the breathalyzer machine or cross-examining the officer who administered the test. *Id.* at 490, 104 S.Ct. 2528.

Four years later, in *Arizona v. Youngblood,* the Supreme Court considered the police's failure to preserve blood and semen samples taken from a rape victim. A police criminologist had conducted an initial review of the samples, but the state failed to preserve the samples by refrigeration so that the defendant could conduct his own tests. 488 U.S. at 53-54, 109 S.Ct. 333. The *Youngblood* Court found that the evidence was not apparently exculpatory, even though it

had potentially greater value than the breath samples in *Trombetta,* because "[t]he possibility that the semen samples could have exculpated respondent if preserved or tested is not enough to satisfy the standard of constitutional materiality in *Trombetta." Id.* at 56 n. *, 109 S.Ct. 333. In explaining *Trombetta's* "apparently exculpatory" requirement, the Court emphasized that it must be apparent that the evidence is exculpatory *before* it is lost or destroyed. *Id.* at 56, 109 S.Ct. 333. The Court then set forth a new standard for lost evidence that is only "potentially useful." *Id.* at 58, 109 S.Ct. 333. The Court held "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58, 109 S.Ct. 333. In contrast, the Court recognized that a bad faith showing is not required when the evidence is apparently exculpatory: "[t]he Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady,* makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence." Id. at 57, 109 S.Ct. 333. The defendant did not establish a due process violation under the facts of *Youngblood* because the evidence was only "potentially useful" and the actions of the police could "at worst be described as negligent." *Id.* at 58, 109 S.Ct. 333.

The issue again arose in *Illinois v. Fisher,* 540 U.S. 544, 549, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004), where the Court reviewed *Youngblood* and *Trombetta.* In *Fisher,* the defendant, who was charged with possession of cocaine, filed a discovery motion requesting all physical evidence, including the cocaine, that the state intended to use at trial. *Id.* at 545, 124 S.Ct. 1200. Before the cocaine was provided to the defendant, the defendant "jumped bond" becoming a fugitive. *Id.* When he was captured ten years later, the state reinstated the possession charges but had, in good faith, already destroyed the cocaine. *Id.* at 546, 124 S.Ct. 1200. The Court reiterated that "the applicability of the bad-faith requirement in *Youngblood* depended ... on the distinction between 'materially exculpatory' evidence and 'potentially useful' evidence." *Id.* at 549, 124 S.Ct. 1200. Bad faith was not necessary if the evidence was "materially exculpatory." Such a showing was only concluded that the cocaine was only "potentially useful evidence" and that there was no due process violation under *Youngblood* because the defendant did not allege that the police acted in bad faith. *Id.* at 547-48, 124 S.Ct. 1200.

Olszewski, 466 F.3d at 55-57.  The Olszewski court noted that "[a] variety of other circuits have considered the relationship between *Trombetta* and *Youngblood* and have concluded that (1) the destruction of "apparently exculpatory" evidence does not require a showing of bad faith but that (2) if the evidence is only "potentially useful," a bad-faith showing is required." Id. at 57 and n. 7 (citing United States v. Moore, 452 F.3d 382, 388 (5th Cir.2006); United States v. Estrada, 453 F.3d 1208, 1212-13 (9th Cir.2006); Bullock v. Carver, 297 F.3d 1036, 1056 (10th Cir.2002); and United States v. Wright, 260 F.3d 568, 571 (6th Cir.2001)). Eleventh Circuit case law is consistent with these cases.  See U.S. v. Roberson, 195 Fed.Appx. 902, 903-904 (11th Cir. 2006) (unpublished) (Defendant must show that the government acted in bad faith in losing potentially useful evidence in order to show a due process violation.); James v. Singletary, 957 F.2d 1562, 1568 n. 4 (11th Cir. 1992) (Destruction of potentially exculpatory evidence violates Constitution only if the police acted in bad faith.); Redman v. Dugger, 866 F.2d 387, 390 (11th Cir. 1989) (Due process is only violated when a defendant can show bad faith on the part of the police who failed to preserve potentially useful evidence.).[2]

---

[2] Defendant has the burden of proving the constitutional violation.  See U.S. v. Revolorio-Ramo, 468 F.3d 771, 774 (11th Cir. 2006) ("'In order to show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense.... 'To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'") (citation omitted); see also Riggs v. Williams, 87 Fed.Appx. 103, 106 (10th Cir. 2004) ("Under *Youngblood,* a defendant can establish a due process violation if he can show that: (1) the government failed to preserve evidence that was 'potentially useful' to the

In this case, defendant does not argue that she can prove that the perfume and jeans are materially exculpatory. Instead, she candidly admits that "the evidence lost *may* have proved exculpatory..." Renewed Motion at 9 (emphasis added), noting that "the exculpatory value of the clothing and perfume in this case cannot be determined with any certainty, precisely because the government lost the evidence." Id. at 6. At most, defendant can only speculate that "[a]rguably, the jeans in the photograph do not resemble, in size or design, the jeans Mrs. Hinton places in her cart on the surveillance video. In addition, the photograph is such that no determination can be made as to whether the perfume in the photograph is the same brand or type of perfume Mrs. Hinton is charged with taking." Id. at 4-5. According to defendant, "if the lost evidence were not the same items as those pictured in the photograph disclosed by the government, the exculpatory value would have been both crucial to this case, and apparent to the government before the items were lost." Id. at 6.

---

defense; and (2) the government acted in bad faith in failing to preserve the evidence."); U.S. v. Varner, 2006 WL 733962, *4 (W.D.Va. 2006) ("[T]o prevail under the *Youngblood* test, the [defendants] must prove that the destroyed evidence had apparent exculpatory value, that the officers were aware of the exculpatory nature of the evidence before its' destruction, that the officers acted in bad faith, and that no reasonable comparable evidence exists."); U.S. v. Solis, 55 F.Supp.2d 1182, 1189 (D.Kan. 1999) ("The defendants do not show that anyone knew the drug evidence had exculpatory value when it was allegedly used or altered. ... Regardless whether the government can offer an innocent explanation for evidence being destroyed or altered, the burden of proof on bad faith remains on the defendants."); Lile v. McKune, 45 F.Supp.2d 1157, 1163 (D.Kan.1999)("Under *Youngblood,* petitioner has the burden of showing the officers acted in bad faith."); U.S. v. Lov-It Creamery, Inc., 704 F.Supp. 1532, 1548 (E.D.Wis. 1989)(The plain language of *Arizona v. Youngblood,* while not using the precise phrase "burden of proof", clearly places that burden on the defendant .... [U]nless a criminal defendant can show bad faith on the part of police, failure to preserve potentially useful evidence does not constitute a denial of due process.").

Defendant's argument echoes that of Justice Blackmun in <u>Arizona v. Youngblood</u>. <u>See</u> <u>Youngblood</u>, 488 U.S. at 68 ("The exculpatory value of the clothing in this case cannot be determined with any certainty, precisely because the police allowed the samples to deteriorate.") (Blackmun, J., joined by Brennan, J. and Marshall, J., dissenting). Unfortunately for defendant, Justice Blackmun's view did not prevail, and the majority declined to commit to courts "the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed," or to impose on the police "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." <u>Id.</u> at 58. Instead, the Court observed:

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.,* those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

<u>Id.</u>

Thus, because the allegedly shoplifted items in this case are, at best, potentially exculpatory, defendant must show bad faith to prove a constitutional violation. However, defendant has failed to establish bad faith in this instance. According to the United States, it is standard Army/Air Force Exchange policy to document allegedly shoplifted items worth

less than $100 in a photograph, and to put those items back into the stream of commerce (that is, on the store shelves) within a short time -- no more than approximately three days from the date of the theft. Last year, AAFES recorded 252 shoplifting incidents, each with an average of two to three items stolen, so that more than 750 such items were returned to store shelves in that period.  This policy has been in effect at least since 2001, and it has two purposes: (1) to relieve security officers from responsibility for keeping up with that many items, and (2) to avoid depriving store owners of the value of their property. Although defendant contends that the policy is unnecessary because shoplifters are charged a fee if they are found guilty, the court may not adjudicate the wisdom of the policy; it may only decide whether or not the policy is followed in good faith.  In this case, nothing before the court suggests that the perfume and jeans were returned to the store in order to hide exculpatory evidence. See Trombetta, 467 U.S. at 488 (Authorities did not destroy evidence "in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny. In failing to preserve breath samples for respondents, the officers here were acting 'in good faith and in accord with their normal practice.' ... The record contains no allegation of official animus towards respondents or of a conscious effort to suppress exculpatory evidence."); U.S. v. Generett, 149 Fed.Appx. 432, 434 (6th Cir. 2005) ("So long as government officials do not destroy evidence 'in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny,' so long as they act 'in good faith and in accord with their normal practice,' and so long as

'[t]he record contains no allegation of official animus towards [the criminal defendant] or of a conscious effort to suppress exculpatory evidence,' ... their actions do not offend the Due Process Clause.") (citation omitted); <u>see also</u> <u>U.S. v. Revolorio-Ramo</u>, 468 F.3d 771, 774 - 775 (11th Cir. 2006).  Thus, the court finds that the government was operating in good faith and in accordance with its normal practice in disposing of the perfume and jeans, and there is no Due Process violation. <u>Cf.</u> <u>U.S. v. Garza</u>, 435 F.3d 73, 75 -76 (1st Cir. 2006) (Sergeant's "apparent desire to free up space in the laboratory was not an improper motivation."); *United States v. Lewis,* 40 F.3d 1325, 1340 (1st Cir.1994) (finding no bad faith in routine destruction of surveillance tapes); *United States v. Arra,* 630 F.2d 836, 849 (1st Cir.1980) (holding that erasure of Coast Guard tapes was done in good faith as part of a routine that was not related to the case.").

Of course, the United States returns items such as these to the stream of commerce at its own peril.  In doing so, it runs the risk that, in some instances, defendants may be able to demonstrate material exculpatory value and bad faith, or that it may find itself hampered in its efforts to prove its own case.  However, in the instant case, the court finds no constitutional violation.

Accordingly, for the foregoing reasons, it is

ORDERED that defendant's Renewed Motion to Dismiss (Doc. # 21) be and hereby is DENIED.

DONE, this 10th day of September, 2007.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE