IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Case No.: 2:07-cr-14-SRW |
| | ) | |
| **MARIA HINTON** | ) | |

**GOVERNMENT RESPONSE TO COURT'S ORDER ON DISCOVERY**

**COMES NOW** the United States, pursuant to Rule 16, *Federal Rules of Criminal Procedure,* and responds to the honorable Court's order of November 6, 2007 (Doc# 59). In this response, the government informs the Court how the government intends to prevent discovery problems such as those experienced in this case from occurring in future litigation.

The order directed that government's review and report should address, at a minimum, the following: (1) discussion with Base Exchange (BX) personnel, including store detectives and security police, as well as lawyers, concerning retention, documentation, chain of custody and disclosure policies relating to videotapes, DVDs, merchandise, reports, photographs, tags, logs and other items of potential evidentiary value; (2) review of policies for maintenance and disclosure of witness names and contact information; (3) review of record-keeping concerning prosecutors' efforts to investigate and obtain discoverable material, as well as disclosures of evidence to defendant's counsel; (4) consideration of the use of checklists and logs which permit timely and informed assessment of the status of discovery by lawyers appearing after the case is

filed, supervisors, and others; and (5) training of counsel concerning their continuing duty of disclosure.

At the outset, the government respectfully acknowledges that performance of its discovery obligations, as outlined below, fell short of the standard legitimately expected. Similarly, the government respectfully asks the Court to accept that the shortcomings were not intentional or motivated by bad faith (recognizing, however, that the impact on the defense and the Court was the same regardless of motivation).

In this case, a misdemeanor information was filed on January 24, 2007, charging the defendant, Maria Hinton (Hinton), with shoplifting a pair of children's jeans and a bottle of men's cologne from the Army and Air Force Exchange Service (AAFES) on November 9, 2006. The pair of jeans was valued at $19.00 and the cologne at $59.00. (Doc # 1).

The defense first filed a "Motion to Dismiss Information or In the Alternative Continue Trial" (Doc #16) on May 1, 2007.  The motion was based in part on the government's alleged violation of discovery rules for not disclosing a false official statement Hinton made while still in the Air Force.

Also on May 1, 2007, this Court continued this case until July 9, 2007 (Doc #17). On May 15, 2007, this Court denied the defense motion to dismiss (Doc #19), holding that the trial continuance cured any prejudice caused by the government's alleged untimely disclosure of the false official statement.

Between May 11 and May 15, 2007, government attorneys unintentionally provided conflicting and sometime inaccurate information to defense counsel regarding availability of the actual pants and cologne bottle.  On May 15, 2007, defense counsel

went to Maxwell Air Force Base (AFB) to view the evidence.  They then learned that AAFES had restocked and resold the stolen items, leaving only a surveillance tape and a Polaroid photograph of the items as evidence available for viewing.

Some dispute exists between the government and the defense attorneys as to what occurred on May 15, 2007.  A former Maxwell AFB attorney, Captain Laura L. Hansen (Capt Hansen) stated in a sworn affidavit on November 6, 2007, that she recalls providing the evidence to the defense team and leaving them alone in the room to examine the items and view the tape.  Had this occurred, it should have provided the defense an opportunity to examine the evidence tag and box.

However, in court, Ms. Patricia Kemp (Ms. Kemp) stated that she and her investigator were not left alone in a room, nor were they provided with the evidence tag and box.  For the limited purposes of this response only, the government will concede that Ms. Kemp's recollection is correct.

On June 7, 2007, the defense filed a Renewed Motion to Dismiss (Doc #21) based on the government's failure to preserve the actual shoplifted items.  After a hearing on the motion on July 27, 2007, this Court denied that motion on September 10, 2007 (Doc #38).

The first trial in this case convened on September 17, 2007.  After the government's first witness, Robert Smith (Smith), testified, the defense made another motion to dismiss based on alleged discovery violations.  Specifically, the defense sought dismissal because the videotape of the search of Hinton after she was detained had been lost and because Smith, an AAFES detective, referred to an incident report he had filed through internal AAFES channels that the government had not disclosed to the defense.

3

The Court denied that motion. However, when the jury was unable to reach a verdict, this Court declared a mistrial and set the case for trial on November 5, 2007.

At the second trial, the Court again declared a mistrial on November 6, 2007 pursuant to Fed. R. Crim P. 16(d)(2)(D), because the defense had not been given copies of the evidence tag or evidence log, nor had the defense been given notice of and permitted to inspect a bottle of cologne like that shoplifted (although not the original bottle). The Court considered but did not impose sanctions against the government and instead issued this order.

In response, the undersigned took the following actions the same day as the Court's order:

1. Sent out the attached e-mail to Captain Satura McPherson (Capt McPherson) and Audrey Griffin (Ms. Griffin), co-counsel and paralegal for this case, respectively (Attachment 1).

2. Discussed the case with Colonel Joseph Dent (Col Dent), the senior attorney at Maxwell AFB, focusing on systemic improvements to avoid a recurrence.

3. Through Capt McPherson, arranged a discovery conference on November 7, 2007, and sent out the attached e-mail (Attachment 2) to Ms. Kemp and Christine Freeman (Ms. Freeman), defense lead counsel.

On November 7, 2007, government and defense counsel met at the Maxwell AFB legal office. At that time, both parties discussed the government's proposal as outlined in Attachment 2, and the defense concurred with that proposal. The government provided defense with the evidence box and its contents (evidence tag, video tape, Polaroid, cologne bottle and security stickers) and allowed them to examine it and watch the video

4

tape alone in the government law library. The defense spent about two hours in the government's office, and counsel scheduled a follow-up discovery conference for November 16, 2007.

Before the follow-up conference, the undersigned personally reviewed the contents of all files in the government's possession to determine their contents. The government also confirmed with its law enforcement branch, 42 Security Forces Squadron (42 SFS), that they had no documents in their possession related to this case, other than the evidence log, which had been previously provided to the defense.

At that follow-up conference, the government provided the defense with various items and information as outlined in Attachment 3. Additionally, the government provided the defense with the opportunity to visit the 42 SFS squadron and interview the evidence custodian as well as well as visiting the BX and interviewing other security personnel.

To the best of the government's knowledge, the government has now provided the defense with copies of all non-privileged documents in its possession. However, the government understands its *continuing* discovery obligations and intends to constantly investigate, monitor and evaluate whether any additional items should be disclosed.

The specific issues raised in the order (*see* Paragraph 2) are addressed below. Before discussing these issues, however, the government respectfully submits the following information for the Court's consideration.

As the Court noted, the undersigned was the sixth attorney to be noticed to appear in this case. Although this represents greater turnover than normal, the nature of military assignments means that any litigated case coming from Maxwell AFB will likely see at

5

least one, if not more, personnel changes. While not an excuse, these transitions, if not carefully managed, offer a fertile breeding ground for discovery shortcomings such as those occurring in this case.

That said, such turnover is a fact of life that the Air Force has been dealing with for 50+ years—and thus has well-established procedures for minimizing the disruption to military activities. Among these measures are detailed checklists and operating instructions, "continuity books" (collections of relevant materials, both current and historic), and standardized filing methods (both electronic and physical).

Among the areas with the most detailed procedures is "military justice," or the Air Force's process for administering its disciplinary and judicial system. All Air Force attorneys are trained in court-martial procedures, including extensive and exhaustive discovery as part of standard trial preparation. Each Judge Advocate General (JAG) and paralegal is supposed to follow a comprehensive checklist before, during and after the court-martial. However, analogous guidelines and procedures are lacking for cases before this Court.

After evaluating the processes used in this case, the undersigned believes that part of the problem was a collective (although subconscious) perception that U.S. Magistrate's Court was somehow "different" than a military court-martial. While this may be true in certain aspects,[1] it is not true in respect to discovery obligations.

---

[1] One of the most crucial distinctions has to do with jury members and scheduling. In the military, the jurors come from the local installation, are relieved from all other military duties, and continue to receive their same salary for the trial's duration. Thus, the financial, travel and professional inconveniences are far less for military jurors than in civilian courts. This allows courts-martial to begin as early (7 or 8 a.m.) and continue as late (6 or 7 p.m.) in the day and last as long as in the week as necessary, even for the equivalent of a misdemeanor trial. The undersigned believes that the government attorneys may have developed the view that because trials before this Court may proceed differently in an attempt to minimize disruption to the jurors' lives, discovery and related activities could be truncated as well. While stressing that this

6

Discovery issues such as those experienced before this Court seldom arise in military courts, even though, in the undersigned's opinion, the discovery requirements are generally as extensive. Therefore, the most fundamental requirement to avoid recurrence of discovery problems is a deliberate and conscious effort to view, treat and prepare for Magistrate's Court with the same attention to detail as demonstrated for military courts-martial. In an attempt to achieve such a "paradigm shift," the government has taken the following steps in response to this Court's order.

**1.  Discussions with BX personnel and others concerning evidentiary policies:** The Maxwell AFB legal office is currently negotiating a "Memorandum of Understanding" (MOU) with the Maxwell BX. The government has proposed that the BX commit to doing the following:[2]

    a.  Documenting, when possible, the suspected criminal activities of the individuals within their store by using the in-store security surveillance and making two compact disc (CD) recordings of all camera surveillance as soon as possible after a potentially criminal event has occurred. The CD will include not only the video cameras following a suspect but also all operating video cameras for that time period, which should run from five minutes before the suspect enters the BX until five minutes after the suspect has left in the custody of Maxwell AFB law enforcement. Each CD will have an evidence tag that includes the following information: Suspect's name, incident time and date, incident number assigned by 42 SFS, names of the responsible SFS member and the member who conducts the search of the suspect.

---

attitude was neither knowing or deliberate, the undersigned also recognizes its potentially damaging impact.

[2] These procedures are still being negotiated and thus could change significantly. These draft proposals are included in this response to show the Court the attempts the government is taking to meet its current obligations. They do not create any additional substantive or procedural right for any defendant.

b. Photographing each piece of evidence with a digital camera multiple times. One photo will encompass the entire piece of evidence, while others will document each side of the price tag. Maxwell Base Exchange Security will burn two copies of the photos onto a CD and attach an evidence tag with the same information as in paragraph "a" above.

c. BX security personnel will take custody of all physical evidence (e.g., the items shoplifted) recovered and owned by the BX, with an evidence tag containing the information outlined above. The security officer will then put the evidence into a locked storage facility, and the BX will maintain custody of the evidence until the court proceedings are complete. BX personnel will obtain the legal office's permission before disposing of any evidence. The 42 SFS will take custody of all physical evidence that is not owned by the BX.[3]

d. As soon as possible after the incident, BX security personnel will prepare a written detailed report of the events leading up to and following the suspect's detention. This and any and all other written reports, statements or other documents regarding this incident (including all emails written to any person at any organization or agency) will be provided to the base legal office at the earliest possible opportunity.

**2. Review of policies for maintenance and disclosure of witness names and contact information:** The undersigned could find no still-valid rationale for redacting witness contact information in copies of reports provided to the defense; therefore the government is discontinuing this process.[4] Additionally, the government is

---

[3] SFS already has detailed evidentiary procedures in place, including legal approve to dispose of evidence.
[4] The Privacy Act of 1974, 5 U.S.C. § 552a, still requires redaction of certain personal information, such as Social Security numbers and birthdates. Depending on the witness, the Act may also require redacting home contact information. In these cases, the government will provide work or duty contact information.

8

currently developing a set of "standard operating procedures" (SOP) for Magistrate's Court, similar to those used for military courts-martial, that will direct disclosure of all potential witnesses (without a determination as to their relevancy to the government's case-in-chief).

However, the government respectfully submits that the reality of military operations means that any or all of the witnesses could be somewhere else by the time a case comes to trial—whether through reassignment, separation or temporary deployment. Again, the government proffers this information not as an excuse but only to help the Court and the defense understand why witnesses who were available when an information is filed may not be so accessible six or eight months later. Knowing this, the government will attempt to maintain better awareness of witnesses' availability and contact information, through methods such as periodic checks in lengthy cases.

**3.     Review of record-keeping concerning prosecutors' efforts to investigate and obtain discoverable material, as well as disclosures of evidence to defendant's counsel:** After assessing the efforts in this case, both through a review of files and discussing the case with personnel involved, the undersigned believes that each attorney and paralegal in the case made a good-faith effort to comply with the government's discovery obligations. That said, while the government's intentions were good, the undersigned respectfully submits that factors such as those discussed on pages 5-7 sidetracked those intentions. The results were was deficient in both performance and documentation, as exemplified by the cologne bottle that looked like—but wasn't—the bottle stolen.

9

When the undersigned came onto the case, the bottle was simply sitting in the evidence box. At least one government attorney formerly on the case (but out of state during the last trial) knew how, when and where the government obtained that bottle, but the case files were completely devoid of any documentation to that effect. Previous attorneys should not have let this happen, but equally important, the undersigned should not have come to court without a full and complete understanding of the bottle's origins and its disclosure to defense (as well as every other piece of information or evidence involved in the case).

Most of the time, attorneys passed on situational awareness in the case orally as they transitioned in and out. While such one-on-one briefings are worthwhile, they cannot be the sole method for transmitting information. The government's planned process improvements outlined in paragraph 4 below should do much to avoid this problem.

4. **Consideration of the use of discovery checklists and logs:** The government concurs with the Court's suggestion that documentation such as this would "permit timely and informed assessment of the status of discovery by lawyers appearing after the case is filed, supervisors, and others." In a court-martial, the government documents each instance of discovery and asks for a signed receipt back from the defense. For Magistrate's Court, the government is implementing procedures that will require attorneys and paralegals to create and maintain a communications log in the case file. It should include any communication with attorneys, court personnel, or defendant (including the date, time and a brief summary of the communication), along with the date, time, location or method, and content of discovery.

Additionally, Ms. Griffin, the Magistrate's Court paralegal, is drafting a comprehensive list of documents that could be created for a case before this Court. The list will not only prompt the government team to identify whether such a document exists, it also calls for government personnel to annotate how and when each document is provided to the defense.

Finally, the government plans to obtain a signed receipt from the defense whenever discovery is provided, either by electronic means or in person. Similarly, the government has begun using evidence logs that will document when the defense is provided with or allowed to examine any evidence.

**5.    Training of counsel concerning their continuing duty of disclosure:**
On November 26, 2007, the undersigned held a discussion and training session with all the attorneys involved in this case. Government counsel discussed the issues outlined above, concentrating again not on any one individual's shortcomings but on the systemic and procedural weaknesses that led to these discovery problems. As discussed above, the undersigned stressed the need to approach a case before this Court with the same meticulous organization and focused attention to detail that any JAG would bring to court-martial preparation.

On December 12, 2007, in preparation for this report, government attorneys met again to review progress to date and to discuss outstanding issues and areas for improvement. Magistrate's Court personnel meet weekly to review their cases, and the undersigned has proposed recurring training on discovery as part of these meetings.

Dated this 13th day of December 2007.

                                          Respectfully submitted,

                                          /s/ Susan L. Turley
                                          SUSAN L. TURLEY
                                          Special Assistant United States Attorney
                                          42 ABW/JA
                                          50 LeMay Plaza South
                                          Maxwell AFB, AL 36112-6334
                                          334-953-2786/2789

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | Case No.: 2:07-cr-14-SRW |
| ) | |
| **MARIA HINTON** ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Christine Freeman, Assistant Federal Defender, 201 Monroe St., Suite 407, Montgomery, Alabama, 36104.

Respectfully submitted,

/s/ Susan L. Turley
SUSAN L. TURLEY
Special Assistant United States Attorney
42 ABW/JA
50 LeMay Plaza South
Maxwell AFB, AL 36112-6334
334-953-2786/2789

## Turley, Susan L Lt Col MIL USAF AETC AU/JA

| | |
|---|---|
| From: | Turley, Susan L Lt Col MIL USAF AETC AU/JA |
| Sent: | 06 November 2007 14:34 |
| To: | Christine A. Freeman |
| Cc: | Mcpherson, Satura L Capt MIL USAF AETC 42 ABW/JA; 'patricia_kemp@fd.org' |
| Subject: | Discovery conference tomorrow |

Ms. Freeman, I understand that Capt McPherson has confirmed with Ms. Kemp that we will meet tomorrow at 10 a.m. in our offices. If you need assistance getting on base, please let one of us know. In the interest of prompting discussion and resolution, I have included some very preliminary proposals below. I'm not asking for a response before tomorrow, nor is anything set in stone, but I did want to give you a feel for the direction I'm headed. If you have time, please review this and let me know your thoughts on Wednesday. Thanks, and see you then.

*Susan L. Turley*
SUSAN L. TURLEY, Lt Col, USAF
Deputy Staff Judge Advocate
Headquarters Air University
50 LeMay Plaza South
Maxwell AFB AL  36112
Phone 334-953-4467 (DSN 493)
Fax 334-953-2787
susan.turley@maxwell.af.mil


Capt McPherson and I will ensure the following occurs:
You (Federal Defenders) receive within a timely fashion (no later than 14 Nov):
1) Unredacted copies of all reports
2) Color digital photos of the cologne bottle and sample security stickers
3) A good quality color copy of the Polaroid photograph
4) Access to the original evidence log book and an opportunity to talk to Technical Sergeant Dinunzio (if desired).

As soon as possible, we will provide you with the following:
1) A copy of the videotape. This is dependent on the Air Force's ability to copy it without sacrificing the quality or accuracy of the original.
2) Contact information for the three security forces members (Napper, Rabb and Madrid) listed on the reports. This depends, of course, on whether the Air Force can track them down, but we are going to exhaust all avenues to do so.
3) Updated witness and evidence lists, as well as a list and description of all non-privileged documents pertaining to this case that we have in our possession. Rather than copying every document over again and providing it to you, we would like to request that you use this list to confirm what you do and don't have. We will then provide you with any documents you don't have. This will also provide both sides with a baseline list of documents that the government asserts exists. The timeframe for this will depend on how long it takes Capt McPherson and I to review every file on this case in the government's possession, including those with other attorneys, the security forces, AAFES, SMSgt Hinton's former unit, etc.

Once we have accomplished the above, I would like to conference again and get your input as to what else you believe you need. Of course, this would not prohibit you from requesting additional information at other times, nor would it relieve us of our continuing obligation to provide you with discovery under the FRCP, but it would give us another chance to benchmark our progress.

Finally, you of course will also receive a copy of the report we file with the judge next month, and we will provide you with continuing access to all previously identified witnesses and evidence.

## Turley, Susan L Lt Col MIL USAF AETC AU/JA

| | |
|---|---|
| From: | Turley, Susan L Lt Col MIL USAF AETC AU/JA |
| Sent: | 06 November 2007 12:19 |
| To: | Mcpherson, Satura L Capt MIL USAF AETC 42 ABW/JA; Griffin, Audrey F Civ USAF AETC 42 ABW/JA |
| Subject: | Hinton follow up |

Ladies, we will need to talk, but could you please start working on the following as soon as possible:
1) Let's make sure that we give unredacted copies of all reports to the defense team.
2) Please take color digital photos of the cologne bottle and provide them to the defense. Also, please get some additional security stickers and give them to the defense.
3) Make a good quality color copy of the Polaroid to provide to the defense.
4) It appears that A1C Napper is still here at Maxwell; at least he's listed in the global. Please confirm that this is in fact the same Napper who was involved in Hinton's case and get good contact info for him and find out whether he's going to separate, PCS, deploy, etc. before March 08. Please have SFS or OSI or someone try to track down Christopher Rabb and Madrid (I think her name is Michelle).
5) See if we can make a copy of the videotape for the defense without sacrificing any quality or accuracy of our copy.
6) Please have someone personally go to SFOI and confirm for him/herself that they have nothing else on this case in their files or anywhere in their possession.
7) I want to have a meeting with every attorney and paralegal--all of us plus Hayes, Haynes, Brugnoli, and James--who has been involved in this case. It looks like 26-27 Nov is probably the optimal time, based on Capt Brugnoli's schedule. Please let everyone else know and see how many will be available on those two days and then find an hour that will work.
8) I would like copies of every e-mail or documentation of communication between the defense team and <u>anyone</u> in this office (in other words, if someone has copies of phone messages in his/her files, I want them). I also want copies of all witness statements, interview notes, etc. whether deemed relevant or not, that are in the possession of anyone in this office.
9) I need the contents of all case files on Hinton in the proposed military justice action--whether in an attorney's individual possession or in the office files, again, without any consideration as to whether they're relevant or not.

Right now, that's all I've come up with, but I'm sure I'll think of more. Thanks.

*Susan L. Turley*
SUSAN L. TURLEY, Lt Col, USAF
Deputy Staff Judge Advocate
Headquarters Air University
50 LeMay Plaza South
Maxwell AFB AL  36112
Phone 334-953-4467 (DSN 493)
Fax 334-953-2787
susan.turley@maxwell.af.mil

1

2



**DEPARTMENT OF THE AIR FORCE**
42D AIR BASE WING (AETC)
MAXWELL AIR FORCE BASE ALABAMA

15 November 2007

42 ABW/JAC
50 LeMay Plaza South
Maxwell AFB, AL 36112-6334

Christine Freeman, Esq.
Federal Defenders Program
Middle District of Alabama
201 Monroe Street, Suite 1960
Montgomery, AL 36104

RE: *United States of America v. Maria Hinton, 2:07-cr-14-SRW*

Dear Ms. Freeman,

Per your request, we have attempted to provide you with the following items:

1. Color copy of Polaroid photograph (picture of recovered items – cologne, children's jeans)

2. Security stickers

3. Color photograph of Issey Miyake cologne

4. DVD of videotape

If there are any further questions concerning this matter please contact our office by calling 953-2786.

Sincerely,

Satura McPherson
Special Assistant United States Attorney

Receipt of the above items acknowledged.

_____Patricia Kemp_____      _____11-16-07_____
Name                            Date

3

DEPARTMENT OF THE AIR FORCE
42D AIR BASE WING (AETC)
MAXWELL AIR FORCE BASE ALABAMA

16 November 2007

42 ABW/JAC
50 LeMay Plaza South
Maxwell AFB, AL  36112-6334

Christine Freeman, Esq.
Federal Defenders Program
Middle District of Alabama
201 Monroe Street, Suite 1960
Montgomery, AL 36104

RE: *United States of America v. Maria Hinton, 2:07-cr-14-SRW*

Dear Ms. Freeman,

   Per your request, we have attempted to provide contact information for the individuals listed below. These members have separated from the military and this was the information they provided before separation. We do not have updated information; additionally, we have no information on Juan Gonzalez. Airman Brandon Napper recently returned from deployment and is not available at this time, but we will provide you with his contact information as soon as he returns to duty.

1. Christopher Rabb
   348 Cape Breton Trail
   Gastonia, NC 28056
   (704) 678-9675

2. Michelle Madrid
   2312 Arlington Street
   Bakersfield, CA 93305
   (661) 444-9378

   If there are any further questions concerning this matter please contact our office by calling 953-2786.

Sincerely,

Satura McPherson
Special Assistant United States Attorney

Receipt of the above information acknowledged.

_Patricia Kemp_                    _11-16-07_
Name                               Date

**DEPARTMENT OF THE AIR FORCE**
AIR UNIVERSITY (AETC)



16 November 2007

Air University Staff Judge Advocate's Office
50 LeMay Plaza South
Maxwell AFB, AL 36112-6334

Christine Freeman, Esq.
Federal Defenders Program, Middle District of Alabama
201 Monroe Street, Suite 1960
Montgomery, AL 36104

RE: *United States of America v. Maria Hinton, 2:07-cr-14-SRW*

Dear Ms. Freeman,

Attached please find the following documents:

DD Form 458, Charge Sheet, 2 pp, with a first indorsement (1 p) and a personal data sheet (2 pp)
Records Review RIP, 5 pp
Legal Review & Special Court Martial Order, 2 pp
Receipts and fax documents, 5 pp
Derogatory data request, 2 pp
Witness statements, Davis, Collier & Smith, 6 pp (SSN, DOB and home address redacted)
AF Form 3545A, Incident report, 5 pp (investigators' SSNs redacted)
Suspect/witness statements, Hinton & Smith (Smith's SSN redacted), 4 pp
Receipt for detained person (Hughes' SSN redacted), 1 p
Suspension notification, 2 pp

With the addition of the defendant's enlisted performance reports, which were provided to you on 6 Nov 07 at the federal courthouse, this constitutes the entire contents of the defendant's military justice case file as of today's date.

SUSAN L. TURLEY, Lt Col, USAF
Special Assistant U.S. Attorney

Receipt of the above documents acknowledged.

_Patricia King_          11-16-07
Name                                           Date